IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SPENCER B.,[1]                                    3:21-cv-00995-BR

         Plaintiff,                               OPINION AND ORDER

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

         Defendant.

GEORGE J. WALL
CAITLIN S. LAUMAKER
Law Offices of George J. Wall
825 N.E. 20th Ave
Suite 330
Portland, OR 97232
(503) 236-0068

         Attorneys for Plaintiff

NATALIE K. WIGHT
Acting United States Attorney
RENATA GOWIE
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1021

_____

[1] In the interest of privacy this Court uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 - OPINION AND ORDER

**WILLY LE**
Acting Regional Chief Counsel
**BENJAMIN J. GROEBNER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2494

       Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Spencer B. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on July 23, 2018, alleging a disability onset date of June 1, 2015.  Tr. 240-47.[1] The application was denied initially and on reconsideration.  On December 1, 2020, Plaintiff amended his alleged onset date to June 5, 2018.  Tr. 258.  An Administrative Law Judge (ALJ) held a

---

[1] Citations to the official transcript of record filed by the Commissioner on November 9, 2021, are referred to as "Tr."

hearing on December 7, 2020.  Tr. 30-93.  Plaintiff was
represented at the hearing.  Plaintiff and a vocational expert
(VE) testified.

The ALJ issued a decision on January 4, 2021, in which he
found Plaintiff is not entitled to benefits.  Tr. 13-24.
Pursuant to 20 C.F.R. § 404.984(d), that decision became the
final decision of the Commissioner on May 7, 2021, when the
Appeals Council denied Plaintiff's request for review.  Tr. 1-6.
*See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).


## BACKGROUND

Plaintiff was born on August 25, 1977, and was 43 years old
at the time of the hearing.  Tr. 242.  Plaintiff has a eleventh-
grade education.  Tr. 38.  Plaintiff has past relevant work
experience as forklift operator, cherry picker, security guard,
and equipment operator.  Tr. 128.  Plaintiff alleges disability
due to post-traumatic stress disorder (PTSD), borderline
intellectual functioning, obesity, sleep apnea, diabetes,
diabetic neuropathy, severe depression, attention-deficit
hyperactivity disorder (ADHD), bipolar disorder, and
hypothyroidism.  Tr. 137.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the
medical records, this Court adopts the ALJ's summary of the

medical evidence.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of

4 - OPINION AND ORDER

evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## **DISABILITY ANALYSIS**

### I.  **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially dispositive.

At Step One the claimant is not disabled if the Commissioner

determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9ᵗʰ Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete

incapacity to be disabled.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work the claimant has done in the past.  20 C.F.R. § 404.1520(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff did not engage in substantial gainful activity from his June 5, 2018, amended alleged onset date through his September 30, 2020, date last

insured.  Tr. 16.

At Step Two the ALJ found Plaintiff has the severe impairments of PTSD, "borderline intellectual functioning described as mild intellectual disability," diabetes mellitus, obesity, and sleep apnea.  Tr. 16.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 17.  The ALJ found Plaintiff has the RFC to perform medium work except Plaintiff

> would need to avoid concentrated exposure to
> unprotected heights, moving machinery, and
> similar hazards, as well as exposure to dust,
> fumes, gases, poor ventilation, and other noxious
> odors.  [Plaintiff] is further limited to
> performing simple, repetitive, routine tasks
> requiring no more than occasional contact with
> co-workers and the general public.  He can perform
> work involving only occasional changes in the work
> routine and setting.

Tr. 19.

At Step Four the ALJ found Plaintiff cannot perform his past relevant work.  Tr. 22.

At Step Five the ALJ found Plaintiff can perform other work that exists in significant numbers in the national economy. Tr. 23.  Accordingly, the ALJ concluded Plaintiff is not disabled.

**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) partially rejected Plaintiff's testimony; (2) failed to address lay-witness statements; and (3) partially rejected the opinion of Gregory Dalton, L.P.C.

## I.    Plaintiff's Testimony

Plaintiff alleges the ALJ erred when he partially rejected Plaintiff's testimony.

The ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show his "impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof."  *Garrison*, 759 F.3d at 1014.

If the claimant satisfies the first step of this analysis

9 - OPINION AND ORDER

and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15. *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (same). General assertions that the claimant's testimony is not credible are insufficient. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Plaintiff testified at the hearing that due to diabetic neuropathy he has trouble walking short distances, his hands swell, and he cannot "pinch his fingers together strong[ly] enough to write." Tr. 39. Plaintiff stated he is unable to "even push the buttons on [his] T.V. remote." Tr. 41. Plaintiff's wife "presses the T.V. on in the morning before she goes to work" and Plaintiff is unable to turn it off or to change the channel. Tr. 41. Plaintiff stated he is unable to press the buttons on a microwave in order to heat up food. Tr. 70. Plaintiff testified he has been not been able to cook since June 2018. Tr. 72. Plaintiff's wife helps him in the shower. "She washes [him]. And . . . when [he is] done . . . she holds [him] under the water, and once [he is] rinsed off she dries [him,] then helps [him] back into bed." Tr. 56. Plaintiff stated he

does not do any household chores such as cooking, cleaning, or vacuuming. Plaintiff noted he has had this level of neuropathy in his hands for four or five years.

Plaintiff testified he is "always depressed"; he "constantly see[s] dead people"; and he has night terrors, "very bad memory loss," and difficulty being around other people, including members of his family." Tr. 42-43. Plaintiff stated his mental conditions have not improved with medication. Plaintiff stated he attended group therapy sessions but he did "very poorly" because he was "always anxious and unfocused." Tr. 50.

Plaintiff testified he does not engage in "social media, get[] online, [or do] anything like that" because he cannot read and he does not like "a lot of the content on there." Tr. 47.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 22. Specifically, the ALJ noted although Plaintiff testified he could not operate a remote control due to neuropathy and he did not know what a google search was, on March 30, 2020, Plaintiff reported to Gregory Dalton, L.P.C., treating mental-health counselor, that he was "playing a lot of video games. Has not been bored at all thanks to his

electronics." Tr. 1439. Similarly, on April 10, 2020, Plaintiff reported he "has been watching TV, playing video games, and working on a youtube channel every evening." Tr. 1446. The ALJ also noted Plaintiff testified he has not been able to cook due to his neuropathy for four or five years. On October 17, 2018, however, Plaintiff reported to Dalton that he was putting "energy towards beginning his home based restaurant again." Tr. 1198. On November 28, 2018, Dalton reported contacting Plaintiff by telephone to "discuss [a] missed appointment." Tr. 1193. Plaintiff reported he "forgot his appointment due to having a large order to prepare for a group of 30. I am running around like a chicken with my head cut off. But [it] is a good thing." *Id*. On December 5, 2018, Plaintiff reported "his cooking and the business is expanding, which he feels excellent [*sic*] and is excited about." Tr. 1191. On March 19, 2019, Plaintiff missed an appointment with Dalton. When Dalton called Plaintiff, "[h]e was at the grocery store buying supplies to cook for his business." Tr. 1323. On July 1, 2019, Plaintiff explained he missed appointments with Dalton because "he has been tied down either through work, church, or home obligations." Tr. 1339. Plaintiff reported on July 26, 2019, that "his business is growing." Tr. 1344. On August 26, 2019, Plaintiff stated his "business is . . . beginning to thrive." Tr. 1348.

The record also reflects although Plaintiff testified he did

"very poorly" in group therapy sessions because he was "always anxious and unfocused," the record reflects Plaintiff successfully attended group therapy from October 2018 through February 2019.  Specifically, Kathryn Schwartz, L.C.S.W., repeatedly noted Plaintiff "activity participated," "asked appropriate questions," and "offered relevant feedback."  *See, e.g.,* Tr. 1190, 92, 93, 95, 97, 1206-07, 1315.

The ALJ noted Amanda Ball, Psy.D., conducted a psychological evaluation of Plaintiff on January 3, 2020.  Dr. Ball noted an

> inspection of validity scales suggest[ed]
> [Plaintiff] attended appropriately and responded
> consistently to test items.  However, there is
> some indication patient may have not answered in a
> completely forthright manner; his response pattern
> is unusual in the sense that they may indicate a
> defensiveness about particular shortcomings as
> well as an exaggeration of certain problems. . . .
>  Regarding negative impression management, there
> are indications suggesting patient tended to
> portray himself in an especially negative manner.
> This pattern can be associated with a "cry for
> help", and/or an extreme negative evaluation of
> oneself.  Regardless of the cause, results from
> this questionnaire are likely an inaccurate
> reflection of patient's objective clinical status.
> Results must be interpreted with considerable
> caution in light of this.

Tr. 1413.  Finally, the ALJ noted the record does not contain any indication that Plaintiff reported to any medical professional the extreme level of neuropathy and impairment he testified to at the hearing.

The Court concludes on this record that the ALJ did not err when he partially rejected Plaintiff's testimony regarding the

intensity, persistence, and limiting effects of his impairments
because the ALJ provided clear and convincing reasons supported
by substantial evidence in the record for doing so.

**II.  Lay Witness Statements**

Plaintiff contends the ALJ erred when he failed to address
the lay-witness statements of Plaintiff's wife, Shaunice B.

Lay-witness testimony regarding a claimant's symptoms is
competent evidence that the ALJ must consider unless he
"expressly determines to disregard such testimony and gives
reasons germane to each witness for doing so." *Lewis v. Apfel*,
236 F.3d 503, 511 (9th Cir. 2001). *See also Merrill ex rel.*
*Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000)("[A]n ALJ,
in determining a claimant's disability, must give full
consideration to the testimony of friends and family members.").
The ALJ's reasons for rejecting lay-witness testimony must also
be "specific." *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir.
2006).  When "the ALJ's error lies in a failure to properly
discuss competent lay testimony favorable to the claimant, a
reviewing court cannot consider the error harmless unless it can
confidently conclude that no reasonable ALJ, when fully crediting
the testimony, could have reached a different disability
determination." *Id.* at 1056.

On September 20, 2018, Shaunice B. completed an Adult
Function Report in which she noted Plaintiff has "no energy" due

14 - OPINION AND ORDER

to severe sleep apnea and he is afraid to be around others due to
PTSD.  Tr. 299.  Shaunice B. stated Plaintiff bathes twice a
week, needs reminders to take medication, does not have
motivation to complete tasks, and has trouble concentrating.
Tr. 300-02.  Shaunice B. checked eighteen out of nineteen items
that Plaintiff's conditions effect.[2]  Shaunice B. noted Plaintiff
does not follow instructions "well at all," does not follow
spoken instructions well, and does not get along with authority
figures.  Tr. 304.

The ALJ failed to discuss Shaunice B. also submitted an undated letter in which she
notes Plaintiff cannot stand long enough to grill burgers, cannot
grocery shop due to panic attacks, cannot prepare meals due to
memory issues, and before she goes to work she prepares meals for
him "that just need to be warmed in the microwave."  Tr. 338.

The ALJ failed to discuss Shaunice B.'s statements.
Shaunice B.'s statements, however, are substantially similar to
Plaintiff's testimony, and the Court has already concluded the
ALJ did not err when he partially rejected Plaintiff's testimony
because the ALJ provided support for his opinion based on
substantial evidence in the record.  The Court, therefore,
concludes to the extent that the ALJ erred when he failed to
address Shaunice B.'s statements, the ALJ's error was harmless.

---

[2] The only item Shaunice B. did not indicate was effected by
Plaintiff's impairments was "using hands."  Tr. 304.

### III. Dalton Opinion

Plaintiff alleges the ALJ erred when he found the opinion of Gregory Dalton, L.P.C., to be unpersausive.

"Because plaintiff filed [his] application[] after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence." *Christopher W. v. Comm'r*, No. 6:20-CV-01632-JR, 2021 WL 4635801, at *6 (D. Or. Oct. 7, 2021). "Under the [new] regulations, an ALJ 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[.]'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(a), 416.920c(a)). "A prior administrative medical finding is a finding, other than the ultimate determination about [disability], about a medical issue made by . . . agency medical and psychological consultants at a prior level of review . . . in [a] claim based on their review of the evidence." 20 C.F.R. § 404.1513(a)(5). In addition, the new regulations rescinded SSR 06-03p in which the SSA "explained how [it] considers opinions and other evidence from sources who are not acceptable medical sources . . . . The [new] rules revised [this] polic[y]. . . . For example, in claims filed on or after March 27, 2017, the final rules state that all medical sources, not just acceptable medical sources, can make evidence that [it] categorize[s] and consider[s] as medical opinions." Rescission

of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p, SSR 96-2P 2017 WL
3928298, at *1 (S.S.A. Mar. 27, 2017).

"The ALJ must articulate and explain the persuasiveness of a
[medical] opinion or prior finding based on 'supportability' and
'consistency,' the two most important factors in the evaluation.
*Christopher W.*, 2021 WL 4635801, at *6 (quoting 20 C.F.R.
§§ 404.1520c(a), (b)(1)-(2)).  "The 'more relevant the objective
medical evidence and supporting explanations presented' and the
'more consistent' with evidence from other sources, the more
persuasive a medical opinion or prior finding."  *Id.* (quoting 20
C.F.R. § 404.1520c(c)(1)-(2)).

> The ALJ may, however, is not required, to explain
> how other factors were considered including the
> relationship with the claimant (length, purpose,
> and extent of treatment relationship; frequency of
> examination); whether there is an examining
> relationship; specialization; and other factors,
> such as familiarity with other evidence in the
> claim file or understanding of the Social Security
> disability program's policies and evidentiary
> requirements.

*Id.* (quoting 20 C.F.R. §§ 404.1520c(b)(2), (c)(3)-(5)).  *But see*
20 C.F.R. § 404.1520c(b)(3)(when an ALJ finds two or more
opinions about the same issue are equally supported and
consistent with the record but not exactly the same, the ALJ must
articulate how these "other factors" were considered).

On November 4, 2020, Dalton completed a Mental Residual
Functional Capacity Assessment in which he stated Plaintiff has

extreme[3] limitations in his ability to use reason and judgment to make work-related decisions, to manage psychologically based symptoms, to set realistic goals and "make plans for [himself] independently of others," and to "maintain personal hygiene and attire appropriate to a work setting."  Tr. 1586-87.  Dalton indicated Plaintiff has marked[4] limitations in his ability to remember locations and work-like procedures; "to understand, remember, and carry out short and simple (1 or 2-step) repetitive instructions or tasks"; "to understand, remember, and carry out detailed (3 or more step) instructions which may or may not be repetitive"; to respond to demands and to adapt to changes; and "to distinguish between acceptable and unacceptable work performance."  Tr. 1586-87.

The ALJ found Dalton's opinion to be unpersuasive on the grounds that Dalton provided "very little narrative explanation for such significant restrictions" and the record did not support such restrictions.  Tr. 21.  Specifically, the ALJ noted numerous treatment notes by Dalton that indicated Plaintiff ran a cooking

---

[3] The questionnaire defined "extreme" as "*unable* to function independently, appropriately, effectively, and on a sustained basis, and he is distracted from work activity 20% or more of the time."  Tr. 1586 (emphasis in original).

[4] The questionnaire defined "marked" as the "ability to function independently, appropriately, effectively, and on a sustained basis is *seriously limited*, and he is distracted from work activity no more than 10-19% of the time."  Tr. 1586 (emphasis in original).

business successfully, grocery shopped for his business, participated in a church men's group, engaged in recreational activities such as fishing, worked on a youtube channel, played video games, and utilized electronics.  The ALJ also noted reviewing psychologist Irmgard Friedburg, Ph.D., noted Plaintiff was only moderately limited in his ability to understand, to remember, and to carry out detailed instructions and to interact with the general public.  Tr. 146-47.  Dr. Irmgard concluded Plaintiff "is capable of remembering and understanding simple instructions."  Tr. 147.  Reviewing psychologist Winifred Ju, Ph.D., reached the same conclusions.  Tr. 163-64.

On this record the Court concludes the ALJ did not err when he found Dalton's opinion to be unpersuasive because the ALJ provided clear and convincing reasons for doing so based on substantial evidence in the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

DATED this 25th day of July, 2022.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge